UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DENNIS SACAZA,

                              Plaintiff,

                                                    **MEMORANDUM AND**
          -against-                                 **ORDER**
                                                    22-cv-02954-SJB

CITY OF NEW YORK, DETECTIVE MICHAEL
FRIEDMAN

                              Defendants.
------------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

        This case arises out of an alleged sexual assault on a Metropolitan Transit

Authority ("MTA") bus.  (Compl. dated Apr. 29, 2022 ("Compl."), Dkt. No. 1 ¶ 20).  A

complaining witness alleged that an unknown man, later identified as Plaintiff Dennis

Sacaza ("Plaintiff" or "Sacaza"), touched her, without consent, on a public bus.  (Defs.'

56.1 Stmt. in Supp. of Defs.' Mot. for Summ. J. dated Sept. 11, 2023 ("Defs.' 56.1 Stmt."),

Dkt. No. 34 ¶ 1).  Sacaza was arrested for and charged with forcible touching, sexual

abuse in the third degree, harassment in the second degree, and endangering the welfare

of a child.  (Compl. ¶¶ 10, 13).  Sacaza alleges that Detective Michael Friedman

("Friedman") viewed surveillance footage of the incident, which revealed no crime

occurred, but arrested him anyway.  (*Id.* ¶ 19–20).  The charges were ultimately

dismissed.  (*Id.* ¶ 18).

        Sacaza filed this action against the City of New York ("the City") and Friedman,

asserting federal claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution,

denial of the right to a fair trial, *Monell* liability against the City, and various state law

claims.  (*Id.* ¶¶ 26–42).  Each side has filed cross-motions for summary judgment on all

claims.  (Pl.'s Mot. for Summ. J. dated Oct. 2, 2023, Dkt No. 30; Defs.' Mot. for Summ. J. dated Sept. 11, 2023, Dkt. No. 32).  For the reasons detailed below, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is denied.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party."  *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute."  *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021).  Accordingly, "a district court is not required to grant judgment as a matter of law for one side or the other."  *Id.* (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  The Court must examine each party's motion and draw all reasonable inferences against the party whose motion is under consideration.  *Id.*

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—

weigh evidence or assess the credibility of witnesses.  *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).  Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded."  *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1.  The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)).  The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence.  *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).  The Court must also disregard conclusory denials that lack citations to admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.  They should contain factual assertions, with citation to the record.  They should not contain conclusions*[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).  Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment

stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).[1]

---

[1] Defendants argue that Plaintiff's 56.1 Statement and Reply Statement "are so rife with improprieties that they should be stricken in their entirety," (Defs.' Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J. & in Opp'n to Pl.'s Cross-Motion for Summ. J dated Nov. 8, 2023 ("Defs.' Reply"), Dkt. No. 37 at 2), because they "contain improper legal argument . . . , contain blatant misrepresentations and/or mischaracterizations of the record" and do not cite to admissible evidence. (*Id.* at 2–3). Plaintiff's 56.1 statements are indeed mistitled—Plaintiff's Statement of Undisputed Facts is named "Plaintiff's Counter Statement of Material Undisputed Facts," and Plaintiff's Counterstatement is titled "Plaintiff's Responses to Defendant New York City's Statement Pursuant to Local Rule 56.1." (Pl.'s Counter Stmt. of Material Undisputed Facts Pursuant to Local Rule 56.1 dated Sept. 30, 2023 ("Pl.'s 56.1 Stmt."), attached as Ex. 1 to Pl.'s Mot. for Summary J., Dkt. No. 30-1; Pl.'s Responses to Defs.' 56.1 Stmt. dated Sept. 26, 2023 ("Pl.'s Counter 56.1 Stmt."), attached as Ex. 2 to Pl.'s Mot. for Summ. J., Dkt. No. 30-2).

And the Court agrees that Plaintiff's responses are largely improper. (*E.g.*, Pl.'s Counter 56.1 Stmt.¶¶ 1–3, 9–11, 13, 14, 16, 20 (failing to admit or deny fact); *id.* ¶ 7 (failing to cite to admissible evidence); Pl.'s 56.1 Stmt. ¶¶ 14, 15, 20, 28 (containing statements made without reference to admissible evidence)). "[C]ourts in [the Second] Circuit frequently deny motions to strike paragraphs in Rule 56.1 statements, and simply disregard any improper assertions." *Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc.*, No. 09-CV-1410, 2012 WL 6091570, at *6 (E.D.N.Y. Dec. 7, 2012) (collecting cases), *report and recommendation adopted in relevant part,* 2013 WL 1334271, at *1 (Mar. 28, 2013). The Court denies the motion to strike but will disregard improper portions of the Plaintiff's 56.1 Statements that violate the standards set forth herein.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective 56.1 statements, and supporting affidavits and exhibits attached thereto, including the surveillance footage—as undisputed unless otherwise noted.[2]

On October 18, 2019, a 15-year-old girl reported (the "complaining witness" or "complainant") to New York City Police Department ("NYPD") officers that on the MTA B46 bus that morning on her way to school, an unknown man "touched her buttock[s] and thigh and rubbed his penis against her leg, vagina and buttocks over her clothing." (NYPD Compl. dated Oct. 18, 2019, attached as Ex. A to Decl. of Bailey Forcier in Supp. of Defs.' Mot. for Summ. J. dated Sept. 11, 2023 ("Forcier Decl."), Dkt. No. 33-1; Defs.' 56.1 Stmt. ¶ 1).[3]  In describing the incident, she told Friedman, as he reported in the Criminal Complaint, the following: the man "rubbed [her] vagina and inner thigh;" she then moved further to the back of the bus; he followed her and then "brushed [his] penis against [her] buttocks in a side to side motion."  (Criminal Compl. dated Nov. 15, 2019 ("Nov. 15 Crim. Compl."), attached as Ex. P to Forcier Decl., Dkt. No. 33-16).  She also said her assailant followed her for three blocks after she exited the bus.  (NYPD Omniform Compl. dated Oct. 18, 2019 ("NYPD Omniform Compl."), attached as Ex. 10 to Pl.'s Mot. for Summ. J., Dkt. No. 30-14).

---

[2] Where a party's statement of fact is "blatantly contradicted" by the video evidence, the Court "view[s] the facts in the light depicted by the videotape."  *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

[3] The Court does not consider there to be a genuine issue of fact where a party fails to respond to a factual allegation or disputes a fact without evidence.  If one side's citation is omitted, the Court has concluded that the excluded 56.1 Statement failed to demonstrate by citations to admissible evidence an actual material fact in dispute.

The complaining witness texted a video that she took of the man, later identified as Plaintiff Sacaza, to Friedman.  (Defs.' 56.1 Stmt. ¶ 2; Pl.'s Counter 56.1 Stmt. ¶ 2).  Friedman then obtained and reviewed video surveillance from the MTA B46 bus.  (*Id.* ¶ 3; Defs.' 56.1 Stmt. ¶ 3).

After viewing the videos, the Court finds that only the following facts are beyond material dispute.  The video shows Sacaza getting on the bus at 7:45 AM.  (Pl.'s MTA Footage, attached as Ex. 1 to Pl.'s Mot. for Summ. J., Camera 6 at 7:45; Pl.'s 56.1 Stmt.¶ 11(a); Defs.' Responses to Pl.'s Counter 56.1 Stmt. dated Nov. 8, 2023 ("Defs.' Counter 56.1 Stmt."), Dkt. No 36 ¶ 11(a)).  At 7:53 AM, the complaining witness boards the bus and stands close to Sacaza, but behind him, and near the front of the bus.  (*Id.* ¶ 11(b); Pl.'s MTA Footage, Camera 2 at 7:53:36; Pl.'s 56.1 Stmt. ¶ 11(b)).  The video does not appear to show any contact between the two while they are at the front of the bus.  (Pl.'s MTA Footage, Camera 2 at 7:54–7:58:39).  It appears that the complaining witness has her hands in front of her legs, holding her bag.  (*Id.*).  At 7:59 AM, additional passengers got on the bus, and both the complaining witness and Sacaza moved toward the middle of the bus.  (*Id.*, Camera 3 at 7:59:30–7:59:35; Pl.'s 56.1 Stmt. ¶ 11(c); Defs.' Counter 56.1 Stmt. ¶ 11(c)).  At first, Sacaza and the complaining witness were a few feet apart.  (Pl.'s MTA Footage, Camera 3 at 7:59:35–7:59:48).  Sacaza looked toward the back of the bus, and moved toward the middle, behind the complaining witness.  (*Id.*, Camera 3 at 7:59:51; Pl.'s 56.1 Stmt. ¶ 11(c); Defs.' Counter 56.1 Stmt. ¶ 11(c)).

From 7:59:51 to 8:00:45, Sacaza's right hand, holding the white plastic bag, is not in view of the camera.  (Pl.'s MTA Footage, Camera 3 at 7:59:51–8:00:45).  Though the white plastic bag can be seen for portions of that period, his right hand cannot be seen.

(*Id.*).  His left hand is in view, holding the handrail above him.  (*Id.*; Pl.'s 56.1 Stmt. ¶ 11(c); Defs.' Counter 56.1 Stmt. ¶ 11(c)).

After they moved to the center of the bus, the complaining witness turned to look behind her, (Pl.'s MTA Footage, Camera 3 at 8:00:04), and does so again about 40 seconds later.  (*Id.*, Camera 3 at 8:00:46; Defs.' 56.1 Stmt. ¶ 4).  A few seconds after that, she looks down and behind her.  (*Id.*; Pl.'s MTA Footage, Camera 3 at 8:00:51).  Less than 15 seconds later, a woman offered the complaining witness a seat, and she sat down.  (*Id.*, Camera 3 at 8:01:11; Pl.'s 56.1 Stmt. ¶ 11(d); Defs.' Counter 56.1 Stmt. ¶ 11(d); Defs.' 56.1 Stmt. ¶ 6).

The footage shows Sacaza getting off the bus about a minute after the complaining witness sat down.  (Pl.'s MTA Footage, Camera 3 at 8:02:42–52; Pl.'s 56.1 Stmt. ¶ 11(e); Defs.' Counter 56.1 Stmt. ¶ 11(e)).  The complaining witness showed her phone to the woman sitting on the bus and got up to get off at that same stop as Sacaza.  (Pl.'s MTA Footage, Camera 3 at 8:02:53; Defs.' 56.1 Stmt. ¶¶ 6–7).  The woman rubbed her back, (Pl.'s MTA Footage, Camera 3 at 8:03:00), and it appears the complaining witness was crying as she got off the bus.  (*Id.* at 8:02:58–8:03:07; Defs.' 56.1 Stmt. ¶ 6).  The footage then shows Sacaza getting back on the bus after letting others off and then continue riding.  (Pl.'s MTA Footage, Camera 9 at 8:03:09; *Id.*, Camera 5 at 8:03:19).

The parties' dispute boils down to whether the video adequately corroborates the complaining witness's account, or whether it demonstrates that no crime was committed.  (Pl.'s 56.1 Stmt. ¶ 3; Defs.' Counter 56.1 Stmt. ¶ 3).  Plaintiff claims the video shows that he committed no crime.  (Pl.'s 56.1 Stmt. ¶ 3).  Defendants, on the other hand, claim the video "depicts facts consistent with the complaining [witness'] account of the assault."  (Defs.' Counter 56.1 Stmt. ¶ 3).

After reviewing the video, Friedman distributed wanted fliers with a photo of Sacaza and requested media attention.  (Defs.' 56.1 Stmt. ¶ 8; Pl.'s Counter 56.1 Stmt. ¶ 8).  PIX 11 published a story on October 24, 2019, featuring a picture of Sacaza (which was taken from the video the complaining witness took on her phone).  (Pl.'s 56.1 Stmt. ¶ 21; Defs.' Counter 56.1 Stmt. ¶ 21).  The article states that the assailant "grabbed her buttocks and private area, and proceeded to rub his midsection on her back[.]"  (PIX 11 Article dated Oct. 24, 2019, attached as Ex. 11 to Pl.'s Mot. for Summ. J., Dkt. No. 30-15).  The article also states that Sacaza followed the complaining witness for three blocks.  (*Id.*).  Another article ran on bklyner.com on October 25, 2019, with the same information. (Pl.'s 56.1 Stmt. ¶ 15; bklyn.com Article dated Oct. 25, 2019, attached as Ex. 9 to Pl.'s Mot. for Summ. J., Dkt. No. 30-13).

The complaining witness identified Sacaza as the perpetrator in a photo array, (Defs.' 56.1 Stmt. ¶ 11; Pl.'s Counter 56.1 Stmt. ¶ 11); he was then apprehended on November 14, 2019.  (*Id.* ¶ 12; Defs.' 56.1 Stmt. ¶ 12;).  The complaining witness then positively identified him in a line up and signed a confidence statement.  (*Id.* ¶ 13–14; Pl.'s Counter 56.1 Stmt. ¶ 13–14).  After the line up identification, Sacaza was arrested and charged with forcible touching and sexual abuse in the third degree.  (Pl.'s Counter 56.1 Stmt. ¶ 15; Defs.' 56.1 Stmt. ¶ 15).  Friedman testified at a deposition that he had probable cause to arrest Sacaza based on the "totality of the circumstances, the [complaining witness's] statement, the bus video showing some sort of interaction between two people."  (Tr. of Dep. of Detective Friedman dated May 19, 2023 ("Friedman Dep. Tr."), attached as Ex. 3 to Pl.'s Mot. for Summ. J., Dkt. No. 30-7 at 23:22–25; 24:1–4).  Though Friedman said that he "couldn't see specifically in what manner [Sacaza] contacted [the complaining witness]," he was "able to verify parts of

the victim's story" in the video. (*Id.* 20:6–11). According to him, "[t]he video showed [Sacaza] exactly as the [complaining witness] described the incident[,] approaching her and then her running away from him and sitting down crying, so it showed [Friedman] that something occurred between the two of them." (*Id.* 21:14–19). He determined the complaining witness was credible "[b]ased on her interview . . . [b]ased on the video that backed up her statement of what occurred." (*Id.* 31:14–16). When questioned about whether the complaining witness told him that Sacaza got off the bus and whether the video verified that, Friedman testified that he did not believe he saw Sacaza get off the bus in the video, (*id.* 38:5–17), but that he did not believe the complaining witness lied to him and that "[s]he was traumatized" and "might have been a little confused." (*Id.* 38:20–22).

Friedman signed a criminal court complaint on November 15, 2019 (the "November 15 Criminal Complaint"), charging Sacaza with forcible touching in violation of New York Penal Code § 130.52(1), sexual abuse in the third degree in violation of § 130.55, harassment in the second degree in violation of § 240.26(1), and endangering the welfare of a child in violation of § 260.10(1). (Defs.' 56.1 Stmt. ¶ 16; Pl.'s Counter 56.1 Stmt. ¶ 16; Nov. 15 Crim. Compl.). The November 15 Criminal Complaint stated that the complaining witness told him that: Sacaza rubbed the complaining witness's inner thigh and vagina, and when she moved further to the back of the bus, Sacaza followed her, and then brushed his pelvic area against her. (Nov. 15 Crim. Compl.). Sacaza was arraigned on November 15, 2019. (Defs.' 56.1 Stmt. ¶ 17; Pl.'s Counter 56.1 Stmt. ¶ 17).

The assistant district attorney filed another signed criminal complaint on November 19, 2019, (Criminal Compl. dated Nov. 19, 2019 ("Nov. 19 Crim. Compl."),

attached as Ex. Q to Forcier Decl., Dkt. No. 33-17), describing the same sequence of events and charging him with the same crimes.  (*Id.*; Defs.' 56.1 Stmt. ¶ 19; Pl.'s Counter 56.1 Stmt. ¶ 19).  Sacaza's charges were dismissed on speedy trial grounds on April 20, 2021.  (Defs.' 56.1 Stmt. ¶ 21; Criminal Court Decision dated Apr. 20, 2021, attached as Ex. O to Forcier Decl., Dkt. No. 33-15).  Sacaza served his Notice of Claim on June 3, 2021.  (Defs.' 56.1 Stmt. ¶ 22; Notice of Claim dated June 3, 2021, attached as Ex. S to Forcier Decl., Dkt. No. 33-19).

In his Complaint, Sacaza asserts causes of action against Friedman for: (1) false arrest under § 1983 and New York state law, (Compl. ¶¶ 26–29, 33–35); (2) malicious prosecution under § 1983 and New York state law, (*id.* ¶¶ 36–37); and (3) denial of his right to a fair trial, (*id.* ¶¶ 38–39).  He also claims that the City is liable for false arrest under *respondeat superior*, (*id.* ¶¶ 30–32), and asserts a *Monell* claim against the City, alleging that the constitutional violations committed were "carried out under the unlawful and injurious polices, customs, and practices" of the City and NYPD.  (*Id.* ¶¶ 40–42).[4]

---

[4] To the extent that Sacaza seeks to hold the City liable through *respondeat superior* for violations of § 1983, those claims are dismissed as a matter of law.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").  However, he may seek to hold the City liable under a theory of *respondeat superior* for his state-law claims.  *Triolo v. Nassau Cnty.*, 24 F.4th 98, 110–11 (2d Cir. 2022) ("New York law is clear that municipalities can be liable for the actions of police officers on false arrest claims under a theory of *respondeat superior*.").

DISCUSSION

A.  <u>False Arrest under Section 1983</u>

The Court looks to New York law in analyzing a false arrest claim.  *See Guan v. City of New York,* 37 F.4th 797, 804 (2d Cir. 2022).  "In New York, to prevail on a false arrest claim, a plaintiff must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Id.* (quoting *Curry v. Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003)).

 "The existence of probable cause to arrest . . . is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quotations and citations omitted). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Id.*  "To determine the existence of probable cause, a court considers the totality of the circumstances, based on 'a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest.' The court considers those facts available to the officer at the time of the arrest and immediately before it."  *Guan*, 37 F.4th at 804 (quoting *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013); additional quotations omitted).

"When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity."  *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citations omitted).  As a result, officers are "not required to explore and eliminate every theoretically plausible claim of

12

innocence before making an arrest." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (quoting *Curley*, 268 F.3d at 70). But, "[u]nder some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause," *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003), because an officer may not "disregard plainly exculpatory evidence." *Panetta*, 460 F.3d at 395.

Sacaza argues that there was no probable cause because the video shows that he did not commit a crime, and Friedman testified that he did not see Sacaza committing a crime in the video. (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J & in Opp'n to Defs.' Mot. for Summ. J. dated Sept. 30, 2023 ("Pl.'s Mem. of Law"), Dkt. No. 30-3 at 12–14). Defendants say that, even though the video did not show Sacaza committing a crime, there was probable cause to arrest because of the complaining witness's statement, identification, and video that corroborated some parts of her story. (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. dated Sept. 11, 2023 ("Defs.' Mem. of Law"), Dkt. No. 35 at 7).

But neither side suggests, and indeed no reasonable jury could conclude, that the video confirms the complaining witnesses' allegations. Indeed, the footage contradicts the sequence of events given by the complaining witness. She alleged that after she got on the bus, Sacaza inappropriately touched her, she moved further back in the bus, he followed her, proceeded to rub himself against her, and then followed her off the bus for three blocks. (Nov. 15 Criminal Compl.; NYPD Omniform Compl.). The video instead shows that at the beginning of the bus ride, when the complaining witness and Sacaza are near the front of the bus, she was behind him, and they did not have contact. (Pl.'s MTA Footage, Camera 2 at 7:53–7:54). The video shows both parties move to the middle of the bus when others got on the bus. (*Id.*, Camera 3 at 7:59:30–7:59:35). The

video then shows Sacaza move behind the complaining witness, and it is unclear what contact, if any, there is between them.  (*Id.*, Camera 3 at 7:59:35–8:01).  The video then shows them both getting off, but with Sacaza getting off *first*, and the complaining witness follows.  (*Id.*, Camera 3 at 8:02:42–8:03:07).  And the video further shows him getting right back on the bus after letting others off, meaning he could not have followed her.  (*Id.*, Camera 9 at 8:03:09, Camera 5 at 8:03:19).

Though there are parts of the video that match the complaining witness's story, there are material differences between her statement and what is depicted in the video.  Specifically, the video suggests that she did not first have an inappropriate interaction with Sacaza, or that she then moved away from him, that he followed her to the middle of the bus, or that he then followed her off the bus for three blocks.  (*Compare* Nov. 15 Criminal Compl.; NYPD Omniform Compl., *with* Pl.'s MTA Footage, Camera 2 at 7:53–7:54; *Id.*, Camera 3 at 7:59:35-8:01, 8:02:42–8:03:07; *Id.*, Camera 9 at 8:03:09; *Id.*, Camera 5 at 8:03:19).  And a reasonable jury could conclude that the video shows there was no physical contact between Sacaza and the complaining witness at any time.  This is not to say there was or was not an assault as alleged; but the video is not evidence of such, and at a minimum, raises doubts about the complainant's recitation of events.

Viewing the evidence in the light most favorable to the Sacaza, the Court concludes that he has raised a genuine issue of fact as to whether the video raised doubt about the veracity and reliability of the complaining witness's statement.  If a jury finds that there are reasons to doubt her statement, a reasonable jury could conclude that Friedman lacked probable cause to arrest Sacaza.  Because of this issue of fact, summary judgment for Defendants is inappropriate.  *Defalco v. MTA Bus Co.*, 788 F. App'x 43, 46 (2d Cir. 2019) (vacating district court's grant of summary judgment because "a

reasonable juror could conclude that [the detective] was aware of circumstances that raised doubt as to [the eyewitness's] veracity, and therefore that [the detective] lacked probable cause to arrest[.]" (quotation and citation omitted)); *see also Dufort v. City of New York*, 874 F.3d 338, 349 (2d Cir. 2017) ("Park's deposition testimony indicates that the nature of her identification of Dufort and her reliability as a witness are disputed questions of material fact which should be resolved by a jury at trial, not by a court at summary judgment.").

On the other hand, Sacaza is not entitled to summary judgment on this claim either.  Viewing the video in the light most favorable to Defendants, a reasonable jury could conclude that the contradictions between the video and the complaining witness's statements do not raise doubts as to her veracity, and therefore determine that there was probable cause to arrest.  But because there are genuine issues of material fact regarding probable cause, the Court denies Sacaza's motion for summary judgment. *E.g., Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 406 (S.D.N.Y. 2009) ("At a minimum, the videotapes leave open and triable the issue of whether the police had a sufficient basis for concluding that Zhao had participated in some criminal activity on the night in question, and hence on that basis, if no other, summary judgment cannot be entered for plaintiff on these claims.") (adopting report and recommendation); *Hanniford v. City of New York*, No. 12-CV-0040, 2014 WL 7801320, at *6 (E.D.N.Y. Dec. 23, 2014) (denying both parties' cross-motions for summary judgment where there were "material questions of fact with respect to the reliability of [the complaining witness's] identification" and, therefore, about whether the arrest was supported by probable cause), *report and recommendation adopted*, 2015 WL 588766, at *1 (Feb. 11, 2015)

B.  Malicious Prosecution

To establish a § 1983 malicious prosecution claim, a plaintiff must establish "both 'a violation of his rights under the Fourth Amendment' and 'the elements of a malicious prosecution claim under state law.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)).

The elements of malicious prosecution under New York law are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 163–64 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).  A plaintiff bringing a malicious prosecution claim under § 1983 "also must demonstrate a sufficient post-arraignment liberty restraint." *Kee v. City of New York*, 12 F.4th 150, 162 (2d Cir. 2021) (quotations omitted).  "Although probable cause to prosecute is a complete defense to a claim of malicious prosecution, such probable cause must be shown as to each crime charged in the underlying criminal action.  Thus, probable cause to prosecute should not be conflated with probable cause to arrest." *Id.* at 166 (citations omitted).

The Court finds that neither party has shown that they are entitled to summary judgment on Sacaza's federal malicious prosecution claim.

1.  Initiation of a Criminal Proceeding

Defendants do not argue that Sacaza has failed to show this element.  But Defendants do cite to the revised November 19, 2019 Criminal Complaint filed by the assistant district attorney, and claim that the complaining witness's sworn statement that the Criminal Complaint was accurate.  (Defs.' Mem. of Law at 13–14.)  It is unclear if Defendants are arguing that this independent judgment broke the chain of causation

16

with respect to Friedman's liability.  *See Dufort*, 874 F.3d at 352 ("[T]he intervening exercise of independent judgment by a prosecutor to pursue the case usually breaks the chain of causation unless the plaintiff can produce evidence that the prosecutor was misled or pressured by the police." (quotations omitted)).

 Here, viewing the facts in the light most favorable to Sacaza, the causal chain was not broken by the filing of the subsequent criminal complaint.

It is undisputed that Friedman viewed the MTA footage prior to signing the November 15 Criminal Complaint, (Defs.' 56.1 Stmt. ¶ 3; Pl.'s Counter 56.1 Stmt. ¶ 3), and that Friedman listed the complaining witness as his only source of information for bringing charges against Sacaza.  (November 15 Criminal Compl. at 1).  The subsequent criminal complaint also only cites to the complaining witness as the source of information for the complaint.  (November 19 Criminal Compl.).  And the Court has found that the video evidence contradicts the sequence of events detailed in the November 15 Criminal Complaint.  *See supra* at 13–14.  Friedman testified that he did not remember whether he conferred with the DA's office or not about this case.  (Friedman Dep. Tr. 24:4–8).[5]

A reasonable jury could find that Friedman misled prosecutors, by either failing to forward the surveillance footage or failing to inform them of the discrepancies between the video and the complaining witness's statement.  Defendants have, thus, not

---

[5] Defendants, in their opposition brief, argue that "all knowledge of the incident and relevant evidence was forwarded by Detective Friedman to prosecutors, . . . [including] surveillance footage."  (Defs.' Mem. of Law at 16).  They cite the Complaint Screening Room Sheet for this proposition.  (*Id.*; *see* Complaint Room Screening Sheet dated Nov. 15, 2019, attached as Ex. B to Forcier Decl., Dkt No. 33-2).  But all this shows is that Friedman requested and received the surveillance footage from the MTA.  (*Id.* at 1).

shown as a matter of law that the subsequent criminal complaint broke the chain of causation. *See Dufort*, 874 F.3d at 353 (vacating district court's grant of summary judgment where there were factual disputes as to whether defendant withheld or misrepresented evidence to prosecutors, noting "[t]he 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect.").

### 2.   Termination of the Proceeding in Sacaza's Favor

It is undisputed that Sacaza's charges were ultimately dismissed on speedy trial grounds, (Defs.' 56.1 Stmt. ¶ 21; Criminal Court Decision), which is a favorable termination for malicious prosecution purposes. *Kee*, 12 F.4th at 163 (holding "that a speedy trial dismissal generally constitutes a 'favorable termination'" for § 1983 malicious prosecution claims).

### 3.   Probable Cause

As with false arrest, probable cause is a complete defense to a malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). "The determination of probable cause to *prosecute* is distinct from probable cause to *arrest*, and is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of the arrest." *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 632 (S.D.N.Y. 2015) (quotations omitted), *aff'd sub nom.*, 672 F. App'x 96 (2d Cir. 2016).

Sacaza was arrested on November 14, 2019; Friedman signed the criminal complaint on November 15, 2019, and Sacaza was arraigned that same day.  (Defs.' 56.1 Stmt. ¶¶ 15–17; Pl.'s Counter Stmt. ¶¶ 15–17).  The Court has already found that there are genuine issues of material fact as to the probable cause to arrest Sacaza.  *See supra* at 13–15.  These same disputed facts underlie the probable cause to prosecute. Defendants have only stated that probable cause did not dissipate between arrest and arraignment; they have not provided additional facts establishing probable cause. (Defs.' Mem. of Law at 13).  Therefore, Defendants are not entitled to summary judgment on the claim based on the existence of probable cause to prosecute.  *See, e.g.*, *Roman v. City of Mount Vernon*, No. 21-CV-2214, 2023 WL 8719968, at *14 (S.D.N.Y. Dec. 18, 2023) ("[T]he same facts that undermine the existence of probable cause to arrest in this case . . . also undermine the existence of probable cause to prosecute[.]") (collecting cases).

4.  Malice

Defendants also argue that Plaintiff's claim fails as a matter of law because there is no evidence of improper motive or a total lack of probable cause.  (Defs.' Mem. of Law at 14).  But because the Court has held that once it "find[s] an issue of material fact as to probable cause [to prosecute], the element of malice . . . [is] an issue of material fact as well." *Boyd*, 336 F.3d at 78.  A lack of probable cause generally creates an inference of malice.  *See e.g.*, *id.*; *Moroughan v. Cnty. of Suffolk,* 514 F. Supp. 3d 479, 527 (E.D.N.Y. 2021) ("[G]iven the factual disputes about probable cause . . . summary judgment on the malice requirement is unwarranted."); *Thomas v. City of New York*, No. 14-CV-7513, 2018 WL 4328825, at *10 (E.D.N.Y. Aug. 10, 2018) (finding an issue of material fact as to malice and denying summary judgment because "there [were] questions of fact that

must be resolved in order to decide whether [d]efendants had probable cause to arrest [p]laintiffs."), *report and recommendation adopted*, 2019 WL 3491486, at *1 (July 31, 2019).

Because the Court has found genuine issues of material fact as to probable cause, and malice, the Court denies Defendants' motion for summary judgment on Sacaza's federal malicious prosecution claim.  *See Thomas*, 2018 WL 4328825, at *10 (denying summary judgment where there were questions of fact as to probable cause and malice).

Further, the Court denies Sacaza's motion for summary judgment because, as discussed *supra* at 18–19, the same disputed facts underlie probable cause to arrest and prosecute in this case.  And Sacaza has not presented any evidence that new facts arose between arrest and prosecution that would negate probable cause.  Accordingly, a reasonable jury could find that there was probable cause to both arrest and prosecute Sacaza based on the video and complaining witness's statements and identifications.  *See, e.g.*, *Soomro v. City of New York*, 174 F. Supp. 3d 806, 814–15 (S.D.N.Y. 2016) (denying cross-motions for summary judgment in face of disputed issues regarding probable cause).

C. Qualified Immunity

Friedman contends he is entitled to qualified immunity because there is no clearly established law holding that probable cause does not exist to arrest in these circumstances, and that in any event, at least arguable probable cause existed to arrest and prosecute Sacaza.  (Defs.' Mem. of Law at 9–12).

First, the "constitutional right to be from arrest without probable cause" is clearly established.  *Soukaneh v. Andrzejewski*, 112 F.4th 107, 124 (2d Cir. 2024); *see Guillen v.*

*City of New York*, 625 F. Supp. 3d 139, 150 (S.D.N.Y. 2022).  And so this argument has no merit.

As for Friedman's arguments that he had arguable probable cause to arrest and prosecute, they mirror his arguments as to the merits of the false arrest and malicious prosecution claims.  "[Q]ualified immunity is available where officers of reasonable competence could disagree on whether the probable cause test was met, *i.e.*, where the existence of probable cause for an arrest was at least reasonable and arguable, even if mistaken[.]"  *Rupp v. Buffalo*, 91 F.4th 623, 642 (2d Cir. 2024) (citations and quotations omitted).  "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law."  *Soukaneh,* 112 F.4th at 122–23.  But, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).

Here there is a material factual dispute about whether the footage of the interaction between the complaining witness and Sacaza raises sufficient doubt about her veracity to eliminate probable cause, and indeed, arguable probable cause.  As noted, *supra* at 13–14, a reasonable jury could review the video footage and conclude that there was absolutely no physical contact or interaction between Sacaza and the complaining witness, and there was no basis to conclude that Sacaza committed any crime.  Friedman views the video evidence one way, but Sacaza has raised sufficient questions—and ones on which the jury could reach a different conclusion—about whether a reasonable officer would view the video (and its absence of any interaction and presence of elements that plainly contradict the complainant's account) in the same

way.  And those questions, which are really a material dispute between the parties, can only be resolved by a jury and preclude summary judgment.  *See Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367–68 (2d Cir. 2024) (reversing district court's grant of qualified immunity because there were unresolved facts in the record, making summary judgment inappropriate); *Murphy v. Hughson*, 82 F.4th 177, 187 (2d Cir. 2023) (reversing district court's grant of qualified immunity where there were disputed facts as to whether the officer's actions were constitutional); *Washington v. Napolitano*, 29 F.4th 93, 112 (2d Cir. 2022) (affirming district court's denial of qualified immunity because the disputed issues of fact preclude summary judgment on whether arguable probable cause existed); *see also Clark v. City of New York*, No. 09-CV-2533, 2015 WL 5719612, at *7 (E.D.N.Y. Sept. 29, 2015) (denying qualified immunity because an issue of fact existed as to whether the officer sufficiently assessed a complaining witness's veracity); *Thomas*, 2018 WL 4328825, at *12 (finding summary judgment on qualified immunity inappropriate due to factual disputes regarding whether a reasonable officer could have believed there was probable cause to arrest).

    D.  <u>Fair Trial</u>

"Notwithstanding the nomenclature, a criminal defendant's right to a fair trial protects more than the fairness of the trial itself . . . . [A] criminal defendant can bring a fair trial claim even when no trial occurs at all."  *Frost v. New York City Police Dep't*, 980 F.3d 231, 249 (2d Cir. 2020).  The right to a fair trial "protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury*."  *Id.* at 250.

"To prove a Section 1983 fair trial claim, a plaintiff must establish that (1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." *Kee*, 12 F.4th at 168. "[G]overnment officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly." *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015). "Information may be 'false' if material omissions render an otherwise true statement false." *Id.* at 548.

Sacaza argues that the information in the November 15 Criminal Complaint, signed by Friedman, is false, since it is contradicted by the surveillance footage. (Pl.'s Mem. of Law at 19–22). He also argues that Friedman admitted the allegations in the November 15 Criminal Complaint were false. (*Id.*).

While the complaining witness's statements may contradict the video, there is no evidence that Friedman was lying when relaying the complaining witness's statements told him those things. (*See* Defs.' Counter 56.1 Stmt. ¶¶ 27, 28(g)). The November 15 Criminal Complaint makes no mention of the video, period. In arguing that Friedman admitted his statements were false in that complaint, Sacaza misconstrues Friedman's testimony. Counsel asked Friedman if he told the DA's office that the information in the criminal complaint "was not according to the evidence he reviewed[.]" (Friedman Dep. Tr. 32:21–25). Friedman answered by saying, "I can't agree with your statement because the video was consistent with what the victim was telling me occurred." (*Id.* 33:3–6). Friedman did admit that he did not see a crime occurring in the video, (*Id.* 20:3–11), but testified that the video verified parts of the victim's story. (*Id.*). But again, there is no mention of the video in the November 15 Criminal Complaint.

Sacaza cannot establish that Friedman falsified information, which means his fair trial claim must be dismissed.[6]  *See, e.g.*, *Bennett v. Vidal*, 267 F. Supp. 3d 487, 499 (S.D.N.Y. 2017) (dismissing fair trial claim, because "this is not a case where the plaintiff has presented evidence indicating that an officer falsified information or fabricated evidence sufficient to defeat a motion for summary judgment").

E.  *Monell*

Under *Monell*, a municipality may be held liable under § 1983 if the deprivation of the plaintiff's constitutional rights "is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  "Such a custom or policy may be reflected through policy statements, ordinances, regulations, or decisions officially adopted and promulgated by that body's officers." *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (quotations omitted).  "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).

---

[6] Though *Morse* suggests that a fair trial claim may be based on *omissions*, 804 F.3d at 547, subsequent Second Circuit precedent suggests that a naked omission is not sufficient. *See Anilao v. Spota*, 27 F.4th 855, 872 n.12 (2d Cir. 2022) (characterizing the constitutional violation in *Morse* as "the affirmative manipulation of data to create false or misleading documents, knowing that such information was false or misleading at the time, and then deliberately presenting the false documents, with the fake facts, to the grand jury," and finding a prosecutor's failure to disclose evidence to a grand jury insufficient for a fair trial claim) (quotations omitted), *cert. denied sub nom. Anilao v. Spota, III*, 143 S. Ct. 1781 (2023).  In any event, Sacaza never frames his fair trial claim on an omission theory or as a *Brady* violation, which may also constitute a viable omission-based theory. *See Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) ("Our limited precedent addressing fair trial claims sounding in a *Brady* violation confirms our understanding that police officers may be held liable for *Brady* violations when they intentionally suppress exculpatory evidence.").

Sacaza alleges that "[t]he defendant Police Officers' violations of [his] Constitutional and Federal Law rights, as complained of herein, were carried out under the unlawful and injurious polices, customs, and practices of the City of New York and its Police Department[.]" (Compl. ¶ 41).  The theory in the Complaint seems to be that Sacaza's arrest was carried out pursuant to an unlawful policy or custom. (*Id*.).  But in his motion papers, he asserts that the City should be liable for failure to discipline Friedman. (Pl.'s Mem. of Law at 22).  But the Complaint does not allege that the City is liable for failure to discipline, and "[a] party is not entitled to amend his complaint on summary judgment." *Lewis v. Lee*, 737 F. App'x 24, 29 (2d Cir. 2018) (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006)).

Even if the Court were to consider this new theory, Sacaza's *Monell* theory fails on the undisputed facts.  "[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  "Where plaintiffs seek to hold a municipality liable under a theory of failure to supervise or discipline . . . they must also show that the municipal policymaker acted with deliberate indifference." *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) ("A custom or practice of failing to properly discipline or supervise police officers will amount to a municipal policy if it was so persistent, manifest, and widespread that the City policymaker constructively acquiesced to it.").

Sacaza argues that the City should be held liable for failure to discipline Friedman after he had previously been sued for false arrest. (Pl.'s Mem. of Law at 22).  Friedman testified that he had been disciplined by NYPD before, (Friedman Dep. Tr. 61:19–22),

though he did not believe it was for false arrest.  (*Id.* 62:4–5).  When asked if he had been sued for false arrest "up to five times," he answered: "Probably.  Maybe somewhere in that number.  I don't really know."  (*Id.* 60:19–21).

That Friedman has been named in other suits for false arrest does not establish a policy or practice of failure to supervise or discipline; Sacaza has failed to put forth any evidence surrounding these lawsuits, including whether the City investigated these incidents or whether Friedman was disciplined, or should have been disciplined, for these incidents.  The only evidence Sacaza has presented is Friedman's deposition testimony that he did not believe he had been disciplined for complaints of false arrest.  (Friedman Dep. Tr. 62:4–5).  This is insufficient to state a *Monell* claim for failure to discipline or supervise.  *See, e.g.*, *Esperanza v. City of New York*, 325 F. Supp. 3d 288, 309 (E.D.N.Y. 2018) ("The fact that [the officer] has been previously named in other civil complaints does not establish a City policy or practice of not taking remedial action to remedy constitutional violations, as required by *Monell*."); *Alwan v. City of New York*, 311 F. Supp. 3d 570, 584 (E.D.N.Y. 2018) (finding plaintiff's failure to discipline claim failed because he had not identified any complaints to which the City failed to respond).  Accordingly, Defendants' motion for summary judgment on Sacaza's *Monell* claim is granted, and this claim is dismissed.

F.  State Law Claims

Sacaza alleged false arrest and malicious prosecution under New York law against both the City and Friedman.  (Compl. ¶¶ 26–29, 36–37).  New York General Municipal Law § 50-i provides that in any action against a municipality or municipal employee, a notice of claim must be served in compliance with § 50-e within 90 days after the claim

arises.[7]  Sacaza was arrested on November 14, 2019, and was released from custody on December 12, 2019.  (Pl.'s 56.1 Stmt. ¶¶ 1, 7).  His false arrest claim arose, at the latest, on December 12, 2019.  But Sacaza served his Notice of Claim on June 3, 2021.  (Defs.' 56.1 Stmt. ¶ 22; Notice of Claim).  His notice of claim was undoubtedly untimely.  Sacaza, however, argues that his notice of claim was timely, and he never received a rejection letter.  (Pl.'s Mem. of Law at 25).  He cites to NY CPLR § 2101(f), which relates to the requirements of papers served or filed in a civil action in New York state court.  The cases he cites do not involve a notice of claim nor are they cases against the City or its employees.  (*See id*.).  A notice of claim is a condition precedent to filing suit against the City, *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); the statute and cases cited by Sacaza are entirely irrelevant.  Therefore, summary judgment is granted, and Sacaza's state law false arrest claims against both Defendants are dismissed.

As for the malicious prosecution claim, Defendants have no timeliness argument, but contend that the claim should be dismissed for the same reasons as the Section 1983 malicious prosecution claim.  (Defs.' Mem. of Law at 19–20).  However, disputed issues of material fact remain on the federal claim.  *Supra* at 16–20.  Because the state law claim relies on the same facts as the federal claim, summary judgment is inappropriate, and Defendants' and Sacaza's motions for summary judgment on this claim are denied.

---

[7] This requirement only applies to municipal employees if the municipality is required to indemnify them.  NY Gen. Mun. Law § 50-e(1)(b).  There is no indication that the City will not indemnify Friedman; indeed, the City and Friedman are represented by the same counsel, the New York City Law Department.

CONCLUSION

The Court grants Defendants' motion for summary judgment on Sacaza's fair trial, *Monell* claim, and state law false arrest claims, and dismisses these claims. Defendants' motion for summary judgment on Sacaza's § 1983 false arrest and federal and state malicious prosecution claims is denied. The Court denies Sacaza's motion for summary judgment on all claims.

The parties are directed to submit a joint pretrial order by **November 25, 2024**.


SO ORDERED.


*/s/ Sanket J. Bulsara* September 25, 2024

SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York