UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DENNIS SACAZA,

Plaintiff,

v.

CITY OF NEW YORK, et al.,

Defendants.
--------------------------------------------------------------X

**MEMORANDUM AND ORDER**
22-CV-2954-SJB

**BULSARA, United States District Judge:**

This case returns to this Court on remand from the Second Circuit to resolve a single question: whether the defendant police officer is entitled to state qualified immunity on Plaintiff's state law claim for malicious prosecution, when there is no evidence the officer acted in bad faith, and his conduct was objectively reasonable. Because the Court concludes that he is, this remaining claim is dismissed with prejudice. And without any valid, underlying claim for relief, the claim against the City of New York is likewise dismissed.

Some background is in order. Plaintiff Dennis Sacaza ("Sacaza") was arrested and charged after a minor accused him of sexually assaulting her on a Metropolitan Transit Authority ("MTA") bus. *Sacaza v. City of New York*, 169 F.4th 363, 367–68 (2d Cir. 2026). After the charges were dismissed, Sacaza commenced this action against Detective Michael Friedman ("Friedman"), the City of New York (the "City"), and several John Does (collectively "Defendants") under Section 1983 and various New York state laws, alleging he was subject to false arrest and malicious prosecution.

(Compl. filed May 19, 2022, Dkt. No. 1 at 6–9). Defendants' motion for summary judgment was granted in part—leading to dismissal of the fair trial, *Monell*, and state law false arrest claims—but the Court denied the motion with respect to two federal claims for false arrest and malicious prosecution, concluding that the question of whether Friedman was entitled to qualified immunity should be resolved by a jury. *Sacaza v. City of New York*, No. 22-CV-2954, 2024 WL 4333688, at *12. The Court reached the same result for the state claim for malicious prosecution. *Id.*

Defendants filed an interlocutory appeal, and the Second Circuit reversed, finding that Friedman was entitled to qualified immunity on the federal claims as a matter of law. *Sacaza*, 169 F.4th at 366. It directed this Court to consider whether he was entitled summary judgment on the state malicious prosecution claim, based on state qualified immunity. *Id.* at 370 n.5 ("On remand, the district court should evaluate Friedman's qualified immunity defense to Sacaza's state malicious prosecution claim in light of our holding that, as a matter of federal law, Friedman had arguable probable cause."). For the reasons explained below, the Court concludes that he is entitled to such immunity, and the remaining claim is therefore dismissed with prejudice.

## STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive*

*Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

## FACTUAL BACKGROUND

This Court is barred from considering issues "explicitly or implicitly decided on appeal." *United States v. Aquart*, 92 F.4th 77, 87 (2d Cir. 2024); *see also Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) ("Under the law-of-the-case doctrine, [w]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.") (quotation omitted). As such, the Court details, and

accepts for the purpose of this remand, the relevant facts as set forth by the Court of Appeals:

> On the morning of October 18, 2019, video footage from an MTA bus traveling through Brooklyn (the "MTA Footage") captured the following: At approximately 7:53 AM, a teenage girl (the "Complainant") boarded a crowded MTA bus on her way to school. Upon boarding, the Complainant was standing to the right of and slightly behind an individual later identified as Sacaza. At this point in the video, the Complainant and Sacaza were located at the very front of the bus, on the passenger side between the driver and the doors. Sacaza's left hand was holding onto a railing and his right hand was out of view, but he was carrying a bag. While the Complainant and Sacaza were at the front of the bus, the MTA Footage does not definitively show any contact between them. But again, Sacaza's right hand was not visible to the camera. Around 7:59 AM, Sacaza stepped off the bus to allow others to board, and the Complainant moved further toward the middle of the bus. Sacaza then re-boarded the bus and stood a few steps away from the Complainant. After about fifteen seconds, Sacaza moved further toward the middle of the bus and stood directly behind the Complainant. Still, Sacaza's left hand was holding onto a railing, and his right hand was out of view.
>
> Sacaza stood directly behind the Complainant for just over a minute. During this minute, the Complainant looked back several times and appeared uncomfortable, though the MTA Footage still does not definitively show any contact between Sacaza and the Complainant. After seeming to notice the Complainant's apparent discomfort, a nearby passenger offered the Complainant a seat. Once seated, the Complainant appeared to take several videos of Sacaza. About a minute and a half later, as Sacaza began to exit the bus with the Complainant following behind, the Complainant showed the nearby passenger something on her phone and appeared to begin crying. The female passenger consoled the Complainant by rubbing her side as the Complainant exited the bus. After exiting at the front of the bus, Sacaza immediately boarded again through a different door near the middle of the bus and continued riding the bus.

*Sacaza*, 169 F.4th at 366–67.

After the Complainant arrived at school, she reported the alleged assault. *Id.* at 367. Later that day, the Complainant went to Friedman's office at the Brooklyn Special Victims Bureau, where Friedman interviewed her and filled out a general investigation report. *Id.* Using images from the videos the Complainant took, Friedman "create[d] wanted posters with Sacaza's face on them . . . [and] requested the MTA footage, which he received [several days later]." *Id.* On October 26, 2019, the Complainant identified Sacaza in a double-blind photo array. *Id.* at 367–68. Sacaza was arrested on November 14, 2019. *Id.* at 368. The same day, the Complainant again identified Sacaza from a lineup and stated she was "absolutely positive" that Sacaza was her assailant. *Sacaza*, 169 F.4th at 368 (cleaned up).

"Friedman signed the initial criminal complaint charging Sacaza with forcible touching, sexual abuse, harassment, and endangering the welfare of a child." *Id.* Friedman listed the Complainant his sole source of information. *Id.* "A second criminal complaint listing the same charges . . . was signed by a Kings County assistant district attorney on November 19, 2019," again with the Complainant as the sole source. *Id.* The second complaint also alleged that Sacaza pulled down the Complainant's pants. *Id.* "While not included in either criminal complaint, the Complainant also alleged on the day of her initial report that after they both exited the MTA bus, Sacaza followed her for three blocks." *Id.*

"Sacaza was released from custody on December 12, 2019. In April of 2021, the case against Sacaza was dismissed on speedy trial grounds." *Sacaza*, 169 F.4th at 368.

## PROCEDURAL HISTORY

On May 19, 2022, Sacaza commenced this action against Friedman, the City, and several John Does. (Compl. at 1). In November 2023, after the conclusion of discovery, Defendants moved for summary judgment, arguing among other things that Friedman was entitled to qualified immunity, and Sacaza filed a cross-motion for summary judgment. (Defs.' Mot. for Summ. J. dated Sep. 11, 2023, Dkt. No. 35 at 8–12; Pl.'s Cross-Mot. for Summ. J. dated Sep. 30, 2023, Dkt. No. 30). The Court granted Defendants' motion for summary judgment on Sacaza's fair trial, *Monell*, and state law false arrest claims. *Sacaza*, 2024 WL 4333688, at *12. However, the Court denied both parties' motions for summary judgment on the federal false arrest claim, and the state and federal malicious prosecution claims. *Id.* at *7, *9. The Court found that a reasonable jury could conclude that probable cause was or was not present based on the available evidence. *Id.* at *7. The Court found that the video did not definitively confirm the Complainant's allegations and there were "material differences between her statement and what is depicted in the video . . . [that] raise[ ] doubts about the [C]omplainant's recitation of events." *Id.* at *6. Based on these material differences, the Court concluded: "[Sacaza] has raised a genuine issue of fact as to whether the video raised doubt about the veracity and reliability of the [Complainant's] statement. . . . [A] reasonable jury could conclude that Friedman lacked probable cause to arrest Sacaza. Because of this issue of fact, summary judgment for Defendants is inappropriate." *Id.* at *7.

On appeal, the Second Circuit reversed the Court's denial of summary judgment as to Friedman's entitlement to qualified immunity under federal law. *Sacaza*, 169 F.4th at 366. "Even absent actual probable cause, police officers are entitled to qualified immunity on federal claims if arguable probable cause existed." *Id.* at 371. In turn, arguable probable cause exists when "police officers of reasonable competence could have disagreed as to whether probable cause existed." *Id.* Applied here, while "the record does show that there were inconsistencies in the Complainant's statements," these inconsistencies were insufficient to undermine the Complainant's credibility. *Id.* at 372. Since Sacaza failed to show that no reasonable officer could find probable cause, "at the very least, arguable probable cause existed." *Id.* The Second Circuit directed this Court to evaluate Friedman's state qualified immunity defense in light of its determination that as "as a matter of federal law, Friedman had arguable probable cause." *Id.* at 370 n.5.

## DISCUSSION

A federal claim for malicious prosecution is, at its core, an allegation of a Fourth Amendment violation, brought pursuant to § 1983. To prevail on such a claim, a plaintiff must show that there was a violation of a Fourth Amendment right (such as a deprivation of a liberty or privacy interest), the initiation or continuation of criminal proceedings, with malice and without probable cause, and favorable termination of the proceeding. *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018).[1]

[1] *Lanning* was reversed by *Thompson v. Clark*, with respect to its holding as to what constitutes favorable termination. 596 U.S. 36, 39 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment

"Actual probable cause" serves as a complete defense to both a § 1983 claim for false arrest, and for a claim regarding the subsequent prosecution, "unless intervening facts discovered between the arrest and initiation of prosecution dissipate probable cause." *Sacaza*, 169 F.4th at 370. "Probable cause, in the context of malicious prosecution, [is] . . . such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003); *see, e.g.*, *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024) ("Where probable cause to arrest exists . . . and there are no intervening facts between arrest and initiation of prosecution to undermine that probable cause, claims of malicious prosecution cannot survive.") (quoting *Powell v. Murphy*, 593 F. App'x 25, 28 (2d Cir. 2014)) (cleaned up).

But even if an officer lacks actual probable cause, a plaintiff may not recover for a § 1983 malicious prosecution claim if the officer is entitled to qualified immunity. "Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (quotations omitted). This is an objective inquiry, turning on whether the conduct at issue would be viewed as illegal by a reasonable officer. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 202

---

claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.").

(2001) ("The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

As applied to a claim for malicious prosecution brought under § 1983, qualified immunity still attaches where "officers of reasonable competence could disagree on whether the probable cause test was met," creating what is known as "arguable probable cause." *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017); *see also Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995) ("An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances.").

The Second Circuit concluded there was arguable probable cause in Sacaza's case, and as such, Friedman was entitled to qualified immunity on the federal claims. 169 F.4th at 372 ("While the MTA Footage is arguably exculpatory in some respects, it is also inculpatory in others. Even assuming Friedman erred and the Complainant made up the accusations or simply got it wrong, a reasonable officer could have believed that there was a basis for arresting and charging Sacaza.").

The analysis for a New York state claim for malicious prosecution is somewhat different. "[F]or malicious prosecution claims brought under New York law, federal courts must faithfully apply New York tort law." *Lanning*, 908 F.3d at 28.

The elements are similar to a federal claim, but there need not be any Fourth Amendment injury. To prevail on a malicious prosecution claim under New York law, a plaintiff must demonstrate: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding

in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)); *see also Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025).

The qualified immunity analysis, however, is potentially different. One set of cases decided by the Second Circuit suggest that the New York test mirrors the federal test—an objective injury that requires dismissal of claims where the officer's probable cause determination was objectively reasonable. *Sacaza*, 169 F.4th at 370 n.5 (citing *Jenkins v. City of New Yo*rk, 478 F.3d 76, 88 (2d Cir. 2007)) ("Similar to the federal doctrine, if, when the facts are construed in favor of the plaintiff, the officer's probable cause determination was objectively reasonable, the court under New York law should dismiss the plaintiff's false arrest claim at the summary judgment stage."). And another thread of cases suggests that the New York test requires that an officer's conduct be both objectively and subjectively reasonable. *Id.* (citing *Lore v. City of Syracuse*, 670 F.3d 127, 166 (2d Cir. 2012)) ("In contrast to the federal standard, which is objectively reasonable reliance on existing law, the New York standard for entitlement to qualified immunity has both objective and subjective components." (quotations and citations omitted)); *see also Triolo v. Nassau County*, 24 F.4th 98, 109 (2d Cir. 2022) ("New York immunity law requires both objective and subjective reasonableness."). The subjective component of the New York qualified immunity standard requires there to be no "undisturbed findings of bad faith" in the record. *Triolo*, 24 F.4th at 109 (quoting *Lore*,

670 F.3d at 166) (noting that some evidence of "ill-will, spite, or other bad faith" is required to satisfy this element).

Under either formulation, however, Friedman is entitled to qualified immunity. The Second Circuit found Friedman had arguable probable cause to arrest and charge Sacaza. *Sacaza*, 169 F.4th at 371 ("Based on the undisputed facts in the record, a reasonable police officer in Friedman's position could have found probable cause that Sacaza had touched the Complainant inappropriately."). Those findings are not subject to challenge on remand. *See supra* at 3; *Jeffreys v. United Technologies Corp.*, 69 F. App'x 28, 30 (2d Cir. 2003) (noting that parties may not "impermissibly s[eek] to re-litigate issues that [the Court of Appeals] had already considered and disposed of in [a previous] appeal").

Sacaza's arguments to the contrary are impermissible attempts to evade the Second Circuit's judgment. He argues that the MTA footage was inconsistent with the Complainant's account in a way that "substantially undermined the complainant's credibility[,]" and that a reasonable officer would have required further investigation to determine whether probable cause existed. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. filed June 11, 2026 ("Pl.'s Opp'n"), Dkt. No. 50 at 5). But while "the record does show that there were inconsistencies in the Complainant's statements . . . a reasonable police officer could have found that the inconsistencies did not undermine the veracity of a fifteen-year-old girl in distress." *Sacaza*, 169 F.4th at 372. Even with inconsistencies between the Complainant's statement and the video footage, "Sacaza's arguments show

only that reasonable police officers could disagree. Thus, at the very least, arguable probable cause existed." *Id.*

Sacaza also contends that the video footage was "plainly exculpatory" and materially undermined probable cause, because it does not clearly show contact between Sacaza and the Complainant. (Pl.'s Opp'n at 2; Pl.'s Reply to Defs.' Mot. for Summ. J. dated July 13, 2026 ("Pl.'s Reply"), Dkt. No. 52 at 4). This argument was also rejected by the Second Circuit. *Sacaza*, 169 F.4th at 372. While "[e]vidence is plainly exculpatory where it shows that a person cannot be guilty of the relevant crime as a matter of law . . . the MTA Footage neither definitively proves nor disproves Sacaza's alleged assault of the Complainant." *Id.* The footage contains both exculpatory and inculpatory elements, and "a reasonable officer could have believed that there was a basis for arresting and charging Sacaza." *Id.*

Sacaza also argues that the inconsistencies in the Complainant's testimony and the MTA footage amount to material facts in dispute, and that this may indicate a lack of probable cause. (Pl.'s Reply at 2–3). But the Second Circuit dispensed with this argument when it found federal qualified immunity existed. *Sacaza*, 169 F.4th at 371. A court may find federal qualified immunity at the summary judgment stage only "if the undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *Jin v. City of New York*, 169 F.4th 373, 379–80 (2d Cir. 2026). The Second Circuit's finding of federal qualified immunity establishes that there are sufficient undisputed facts and inferences to find arguable probable cause.

If the test for state immunity is purely objective, the Court of Appeals decision here—under federal law—also requires that the remaining claim against Friedman be dismissed on state immunity grounds. *E.g.*, *Johnson v. City of New York*, No. 05-CV-7519, 2011 WL 2693234, at *4 (S.D.N.Y. June 30, 2011) ("If it was objectively reasonable for [an] officer to believe that [an] arrest was lawful, probable cause exist[s] to prosecute for resisting arrest, and the officer is entitled to qualified immunity under New York law.").

But even if there is both an objective and subjective component to qualified immunity, the state malicious prosecution claim still must be dismissed. Sacaza has failed to establish bad faith. Indeed, Sacaza points to no evidence indicating bad faith. Friedman testified that he had never seen Sacaza prior to seeing him in video taken by the Complainant. (Dep. of Detective Michael Friedman ("Friedman Dep."), attached to Defs.' Mot. for Summ. J. as Ex. A, Dkt. No. 48-2 at 16:24-17:8). Friedman also testified that he did not know Sacaza prior to the Complainant's case and had not knowingly encountered him in his years as a detective. (*Id.* at 17:13-23). There are no facts in the record to suggest that Friedman had any feelings towards Sacaza prior to his identification and arrest, let alone feelings of ill will or spite.

Instead, Sacaza argues that Friedman should have "engaged in further investigations to ensure the existence of probable cause," and Friedman's decision not to further investigate indicates bad faith. (Pl.'s Opp'n at 5). But declining to conduct additional investigation is distinct from engaging in deceptive or dishonest conduct. *See Triolo*, 24 F.4th at 109 (finding that a detective declining to speak to an additional witness was "insufficient to support a finding of malice," and even if the record

established "callousness or indifference . . . such a finding does not preclude the legal conclusion that [the detective] acted in subjective good faith").

Nor can bad faith be established with "mere conjecture and surmise [that charges were] procured as a result of conduct undertaken by the defendants in bad faith." *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003) (quotations omitted). As Sacaza "adduced no evidence, circumstantial or otherwise," that Friedman acted in bad faith, other than Sacaza's conclusory claim that Friedman lacked probable cause, he failed to establish bad faith. *Id.* Thus, even under a two-pronged inquiry, Friedman is entitled to qualified immunity under New York law.

Friedman's entitlement to qualified immunity requires the claim against the City of New York also be dismissed. "New York law is clear that municipalities can be held liable for the actions of police officers . . . under a theory of *respondeat superior*." *Triolo*, 24 F.4th at 110–11. However, "where there is no underlying liability, there can be no vicarious liability." *Id.* at 112; *see, e.g.*, *Hargroves v. City of New York*, No. 03-CV-1668, 2014 WL 1271024, at *4 (E.D.N.Y. Mar. 26, 2014) ("Given that the state false arrest and malicious prosecution claims are dismissed as against the individual officers, plaintiffs' same claims against the City must also be dismissed. . . . In other words, by dismissing these claims as against officers . . . there is no tort upon which *respondeat superior* liability may be predicated."). Because Sacaza's malicious prosecution claim against Friedman fails, so too must his claim against the City.

CONCLUSION

For the foregoing reasons, Friedman has qualified immunity as to the state law claim of malicious prosecution. The Court dismisses Sacaza's state malicious prosecution claim with prejudice. The claim against the City is likewise dismissed with prejudice. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: October 21, 2026
Central Islip, New York